**Richard ROISE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 03–98–00338–CR.**

Court of Appeals of Texas, Austin.

Nov. 4, 1999.

Released for Publication Dec. 2, 1999.

---

David B. Frank, Austin, for Appellant.

Karyn D. Scott, Asst. Dist. Atty., Austin, for State.

Before Justices KIDD, PATTERSON and ONION.*

---

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003(b) (West 1998).

1. The current code is cited for convenience. The instant offenses were alleged to have been committed on June 24, 1997. Appellant was thus tried pursuant to Act of May 27, 1985,

JOHN F. ONION, Jr., Justice (Retired).

Appellant Richard Roise was charged by indictment with five counts of possessing child pornography. *See* Tex.Penal Code Ann. § 43.26(a) (West Supp.1999).[1] The jury acquitted appellant on four counts and convicted him on Count V of the indictment which involved allegations of possession of twenty-nine separate photographs. After finding as true the allegations of prior felony convictions for burglary and contributing to the delinquency of a minor in New Mexico, and for sexual assault in Tarrant County, Texas, the trial court assessed punishment at 25 years' imprisonment. *See* Tex.Penal Code Ann. § 12.42(d) (West Supp.1999).

## POINTS OF ERROR

Appellant advances thirteen points of error. He challenges both the legal and factual sufficiency of the evidence. In addition, he complains of a number of evidentiary rulings including the failure to exclude the testimony of Matthew Ferrera, a State "expert" witness, the exclusion of all of the testimony of Leonard Snyder, a defense witness, exclusion of portions of A.D. Coleman's testimony, a defense "expert" witness, and the admission into evidence of a videotape cassette entitled "Chicken Hawk: Men Who Love Boys" and an accompanying sales receipt. Appellant further contends that the trial court erred in refusing to define the word "lewd" in the jury charge, and in denying a requested instruction on selective enforcement or prosecution. Lastly, appellant urges that he was prevented from interrogating the jury panel about the statutory qualifications of jurors.

69th Leg., R.S., ch. 530, § 2, 1985 Tex.Gen. Laws 2133, 2134, *amended* by Act of April 25, 1995, 74th Leg., R.S., ch. 76, § 14.51, 1995 Tex.Gen. Laws 458, 840 (Tex.Penal Code § 43.26(a)) since amended by Act of May 23, 1997, 75th Leg., R.S., ch. 933, § 1, 1997 Tex.Gen. Laws 2931 (effective Sept. 1, 1997).

## COUNT V

Count V of the indictment, in effect, charged that appellant, on or about June 24, 1997, did then and there intentionally and knowingly possess material containing a film image that visually depicted a child younger than 18 years of age at the time the film image of the child was made, and the child is engaging in sexual conduct, to wit: lewd exhibition of the child's genitals, and that appellant knew the child was engaging in sexual conduct. Twenty nine separate photographs were alleged in the count.

The indictment was brought under section 43.26(a) of the Penal Code in effect at the time of the offense. *See* note 1. Under the statute, film image was defined as including "a photograph, slide, negative, film, or videotape, or a reproduction of any of these."

## BACKGROUND

Chief of Police Robert Snyder of Manor told the jury that he came into contact with appellant on June 24, 1997, after learning that some illegal visual material might be in appellant's hotel room. Chief Snyder obtained from appellant both an oral and a written consent to search the room.[2] In the hotel room, Snyder found the book "Immediate Family." Several photographs therein were the subject matter of Count I of the indictment. He also discovered the book "Radiant Identities," several pages and photographs of which were the subject matter of Count II. One of two videotape movies found on appellant's bed was entitled "Leolo," two portions of which were the subject matter of Counts III and IV. In appellant's dresser drawers, among his clothing, the police found the 29 photographs which formed the basis for Count V upon which appellant was convicted.

The 29 photographs were introduced. Dr. Beth Nauert, a pediatrician, testified that, using the Tanner Staging process for sexual maturity rating, she was able to determine that most of the 29 photographs involved individuals under 18 years of age at the time of the photographs. Ella Watson testified for the defense giving her book store and publishing company experience. Watson related that the Book People store where she worked carried both of the books found in appellant's room. She did not testify as to the 29 photographs involved in count V.

A.D. Coleman, an art critic and writer for 30 years for specialized photographic journals and a contributor to well-known general publications, testified for the defense. He explained that a number of the 29 photographs alleged in Count V were copies of photographs made by Baron Wilhem Von Gloeden who worked in Italy in the latter part of the nineteenth century and the first two decades of the current century, and who was a student of classical art. Coleman stated that Von Gloeden's photographs were replications of classical motifs in visual art reflecting the Greco-Roman culture where nudity was socially acceptable in art. The photographs were exemplars, he reported, of artistic ideas concerning architecture, lighting costume, youth, athletics, fraternity, religion, competition, and death. Coleman related that the photographs were used for educational purposes and were available in book stores, museums, and public collections around the world. Coleman testified that State's exhibits 17, 28, and 29 were photographs by Edward Weston and were considered classics in photography, and for the last 40 or 50 years these prints had

2. In a pretrial hearing, Chief Snyder reported that one of his officers had arrested appellant for public intoxication on June 24, 1997, after appellant returned a 10 year-old boy to the boy's home. The boy had been reported missing. Subsequent to his arrest, appellant escaped from the police station but was re-apprehended. Chief Snyder talked to the boy, and then learned from appellant that appellant had a previous sexual assault conviction involving an 11 year-old boy. This background information was not revealed to the jury.

been exhibited in many museum collections. Weston, according to Coleman, drew upon some of the same ideas utilized by Von Gloeden, and Weston was well-known for the technical skills involved in creating his photographs.

Dr. Matthew Ferrera, a clinical psychologist specializing in forensic psychology, was called in rebuttal by the State. He testified as to a four-step process for sexual arousal which included impulse (recognizing another as a sexual object), fantasy, planning, and action. Ferrera testified that the 29 photographs of Count V would elicit a sexual response because the photographs viewed children in terms of their sexuality and apprised them as sexual beings. He stated that the photographs could feasibly harm the participating children later in life and in turn harm society.

William Simon, a sociologist, testified for the defense, but since he testified only about the film, "Leolo," his testimony is rendered moot by virtue of the jury's verdict of acquittal as to Counts III and IV of the indictment.

## LEGAL SUFFICIENCY

In his first point of error, appellant challenges the legal sufficiency of the evidence to support the conviction under Count V of the indictment.

In determining whether the evidence is legally sufficient to support the conviction, we view the evidence in the light most favorable to the verdict, asking whether any rational trier of fact could have found beyond a reasonable doubt all of the essential elements of the offense charged. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Lane v. State,* 933 S.W.2d 504, 507 (Tex.Crim.App. 1996); *Emery v. State,* 881 S.W.2d 702, 705 (Tex.Crim.App.1994), *cert. denied,* 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995).

■ In support of the first point of error, appellant calls our attention to this standard of review, then simply asserts,

without more, that the child models in the 29 photographs of Count V were not shown to be engaged in sexual conduct, to wit: lewd exhibition of the genitals. There has been, however, no compliance with the briefing rules. *See* Tex.R.App.P. 38.1(h). Other than the standard of review, appellant has offered no argument, authorities, or references to the record to support his contention. The simultaneous possession of each item of child pornography constitutes a separate offense or "an allowable unit of prosecution." *See Vineyard v. State,* 958 S.W.2d 834, 837 (Tex.Crim.App. 1998). Other than the assertion, appellant has made no attempt to demonstrate the insufficiency of the evidence concerning the possession of all or any of the 29 photographs. The point of error is abandoned and waived. *See Aldrich v. State,* 928 S.W.2d 558, 559 n. 1 (Tex.Crim.App. 1996); *Huerta v. State,* 933 S.W.2d 648, 650 (Tex.App.—San Antonio 1996, no pet.); *see also McDuff v. State,* 939 S.W.2d 607, 613 (Tex.Crim.App.), *cert. denied,* 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). Point of error one is overruled.

## FACTUAL SUFFICIENCY

■ In point of error two, appellant claims the evidence is *factually* insufficient to sustain the conviction under Count V. A factual sufficiency of the evidence analysis begins with the presumption that the evidence supporting the judgment is *legally* sufficient. *See Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). In a challenge to the factual sufficiency of the evidence, we view the evidence without employing the prism of "in the light most favorable to the verdict." *Id.* at 129. A reviewing court must consider *all* of the evidence impartially, comparing evidence that tends to prove the existence of a disputed fact or facts with evidence that tends to disprove that fact or those facts. *See Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). The verdict or judgment is to be set aside only when the factual finding is so against the great

weight and preponderance of the evidence as to be clearly wrong and unjust. *See Clewis,* 922 S.W.2d at 129. In the factual sufficiency analysis, it must be remembered that the trier of fact is the sole judge of the weight and credibility of the testimony. *See Santellan,* 939 S.W.2d at 164. Appellate courts should be on guard not to substitute their own judgment in these matters for that of the trier of fact. *Id.* One principle of the analysis is deference to the findings of the jury or other fact finder. *See Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997). "A decision is not manifestly unjust because the jury [or fact finder] resolved conflicting views of the evidence in favor of the State." *Id.* at 410. Courts of Appeals are not at liberty "to engage in fact-finding." *Id.* at 409.

Appellant relies almost exclusively upon the testimony of his witness, A.D. Coleman, an art critic, that the photographs in question were never intended to be viewed as anything but serious works of art, that they were used for educational purposes, and found in many museums. Appellant urges that Coleman's testimony established the affirmative defense that the possession of the photographs was for an educational purpose. *See* Tex.Penal Code Ann. § 43.26(c) & § 43.25(f) (West 1994). The trial court submitted the affirmative defense to the jury. The jury, however, rejected the defense as to Count V of the indictment.

The evidence need not be reiterated. There was evidence supporting the State's version of the facts as well as appellant's affirmative defense. We have examined all the evidence impartially, and giving due deference to the jury's verdict, we conclude that the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Point of error two is overruled.

## FAILURE TO EXCLUDE FERRERA'S TESTIMONY

In points of error three and four, appellant contends that the trial court erred when it failed to exclude the testimony of Dr. Matthew Ferrera "because the reasoning and methodology underlying the testimony was not scientifically valid or reliable," and the evidence was not relevant.

■ Preliminary questions concerning admissibility of evidence are determined by the trial court. *See* Tex.R.Evid. 104(a). This determination will not be overturned absent a clear abuse of discretion. *See Broders v. Heise,* 924 S.W.2d 148, 151 (Tex.1996); *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 558 (Tex. 1995).

■ The test for determining whether an abuse of discretion occurred is not whether the facts present an appropriate case for the trial court's action; rather, the test is whether the trial court acted without reference to any guiding rules and principles, or in other words, acted in an arbitrary and unreasonable manner. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

In making the initial determination of admissibility of evidence, Texas courts must apply the principles set forth in the evidence rules governing relevancy. *See* Tex.R.Evid. 401–403. When the offered evidence is the testimony of expert witnesses, the court must apply the principles set forth in the rules governing expert testimony. *See* Tex.R.Evid. 702–705; *North Dallas Diagnostic v. Dewberry,* 900 S.W.2d 90, 94 (Tex.App.—Dallas 1995, writ denied). To meet the relevancy test, the proffered evidence must first have probative value, and second, the proposition must be of consequence to some issue in the trial. *See* Tex.R.Evid. 401. Although relevant, a trial court may nevertheless exclude evidence if its probative value is substantially outweighed by the danger of one of the factors set forth in Rule 403.

Rule 702, which governs the admissibility of expert testimony, provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Tex.R.Evid. 702.[3]

■■■ The party offering the expert's testimony bears the burden of proof. *See Broders*, 924 S.W.2d at 151–52; *Matson v. State*, 819 S.W.2d 839, 851 (Tex.Crim.App. 1991). Rule 702 contains two initial hurdles that must be overcome before expert testimony will be admissible. As the rule itself requires, the proponent of the testimony must establish (1) that the scientific, technical, or other specialized knowledge will aid the trier of fact, and (2) that the expert witness is qualified to testify on the subject. *See Penry v. State*, 903 S.W.2d 715, 762 (Tex.Crim.App.), *cert. denied*, 516 U.S. 977, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995).

■■■ Under the first prong, an expert's opinion should be based on a body of scientific, technical, or other specialized knowledge that is pertinent to the facts in issue, and sufficiently reliable for the expert's testimony to assist the jury or trier of fact. *See Dewberry*, 900 S.W.2d at 94. As to the second prong, no rigid formula exists for determining whether a particular witness is qualified to testify as an expert. *See* 2 Steven Goode, Olin Guy Wellborn III, & M. Michael Sharlot, *Guide To The Texas Rules of Evidence: Civil and Criminal*, § 702.3 at 54 (Texas Practice Supp. 1999). The expertise must be measured against the particular opinion the expert is offering. *See, e.g., Pace v. Sadler*, 966 S.W.2d 685, 689–90 (Tex.App.—San Antonio 1998, no pet.) (nurse permitted to testify regarding standard of reasonable nursing case, but not about diagnosis of heart condition); *Ponder v. Texarkana Mem.*

*Hosp., Inc.*, 840 S.W.2d 476, 477–79 (Tex. App.—Houston [14th Dist.] 1991, writ denied). While the proponent of the testimony has the burden of establishing the expert's qualifications, the trial court has the responsibility to ensure that "those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." *Broders*, 924 S.W.2d at 152. "[A] person with a college degree should not be allowed to testify that the world is flat, that the moon is made of green cheese, or that the Earth is the center of the solar system." *Robinson*, 923 S.W.2d at 558. The questions do not stop if the expert has an M.D. degree, a J.D. degree, or a degree in psychology. A degree alone is not enough to qualify a purported expert to give an opinion, as the case may be, on every conceivable medical question, legal question, or psychological question. The inquiry must be into the actual qualification. *See Broders*, 924 S.W.2d at 153. There must be a "fit" between the subject matter at issue and the expert's familiarity therewith. *Id.* The proponent must establish that the expert has knowledge, skill, experience, training, or education regarding the specific issue before the trial court which would qualify the expert to give an opinion on that particular subject. *Id.*

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), upon which appellant relied in part at trial, held that Federal Rule of Evidence 702 required that scientific evidence be "not only relevant, but reliable." *Id.* at 589–90, 113 S.Ct. 2786. In determining the reliability of the testimony, the United States Supreme Court held that a number of factors bear on the inquiry including: (1) whether the theory or technique can be or has been tested, (2) whether the theory or technique has been subjected to peer review or publication, (3) the known or potential rate of error, and

**3.** Rule 702 is equally applicable to both Texas civil and criminal cases and is worded the same as Federal Rule of Evidence 702 (except for a comma). Thus, in a Texas criminal case, Texas civil cases and federal cases may be looked to for guidance.

(4) general acceptance within the relevant scientific community. *See id.* at 593–95, 113 S.Ct. 2786. The court emphasized that the *Daubert* inquiry was "a flexible one." *Id.*

Earlier, the Court of Criminal Appeals held in *Kelly v. State,* 824 S.W.2d 568 (Tex.Crim.App.1992), that Texas Rule 702 required the satisfaction of a three-part reliability test before *novel* scientific evidence would be admissible: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Id.* at 573. A number of factors relating to determination were also listed. *Id.*[4]

Later, the Court held that the *Kelly* inquiry was substantially identical to the *Daubert* inquiry. *See Jordan v. State,* 928 S.W.2d 550, 554 (Tex.Crim.App.1996). Still later, the Court held that although *Kelly* involved *novel* scientific evidence, the *Kelly* analysis applied to all scientific evidence, novel or not. *See Hartman v. State,* 946 S.W.2d 60, 62–63 (Tex.Crim. App.1997).

In 1995, the Texas Supreme Court, concerned about the abusive use of professional expert witnesses, adopted a reliability standard for Rule 702. *See Robinson,* 923 S.W.2d at 556. Persuaded by the reasoning in *Daubert* and *Kelly,* the court held that, in addition to showing the expert witness is qualified, Rule 702 requires the proponent to show that the expert's testimony is relevant to the issues in the case and is based on a reliable foundation. *Id.* The *Robinson* court added two additional non-exclusive factors to those listed in *Daubert* in making a threshold determina-

tion of admissibility. *Id.* at 557. Thus, two high courts of Texas and the United States Supreme Court are in general agreement about scientific expert evidence.

The more recent question is whether the test for expert scientific evidence is applicable to non-scientific expert testimony. *See Nenno v. State,* 970 S.W.2d 549 (Tex. Crim.App.1998), held that *Kelly* was applicable but was to be applied with less rigor when addressing fields of study aside from the hard sciences, such as the social sciences or fields that are based primarily upon experience and training as opposed to the scientific method. *Id.* at 560–62. The appropriate questions according to *Nenno,* are: (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony relies upon the principles involved in the field. *Id.* The foregoing has been described as the standard for admission of expert testimony in the "soft" sciences. *See Weatherred v. State,* 975 S.W.2d 323 (Tex.Crim.App. 1998).

In *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713 (Tex.1998), a result similar to that of *Nenno* was reached. Scientific opinion based on a witness's individual skill, experience, or training must still meet reliability and relevance requirements, but need not meet specific factors in assessing reliability. *Id.* at 722–26. The Court noted that there must not be "too great an analytical gap between the data and the opinion proffered." *Id.* at 727. And even more recently, the United States Supreme Court has held that a federal trial judge's gatekeeping obligation under the federal rules of evidence—to

---

4. The factors identified were:

(1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; (2) the qualifications of the expert(s) testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate

of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the person(s) who applied the technique on the occasion in question.

*Kelly,* 824 S.W.2d at 573.

insure that the expert witness's testimony rests on a reliable foundation and is relevant to the task at hand applies to all expert testimony, not just scientific expert testimony. *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

Dr. Ferrera, a clinical psychologist who specializes in forensic psychology, testified for the State "in rebuttal." Little, if any, of his testimony was rebuttal evidence. Ferrera had obtained his bachelor's degree and his Ph.D. degree in psychology. He had interned and completed his residency at different hospitals. At the time of the trial he had been in private practice for seven years dealing almost exclusively with probationers, parolees, and jail and prison inmates. Previously, he had served as Chief of Counseling with the Texas Youth Council and later was Chief Psychologist with the Texas Department of Corrections as it was then known. Dr. Ferrera had also authored a book on group counseling with juvenile delinquents.

During a voir dire examination in the jury's absence, Ferrera testified that he had worked with adults and children who had been victims of sexual abuse and had studied extensively in the area of criminal sexual offenses and sexually related material. When the prosecutor asked about the specific steps in sexual arousal, Ferrera responded that there was a four-step process. Impulse, he explained, was the first step, which is recognizing another individual as a sexual being, and rating or thinking of that individual in sexual terms. Fantasy, the second step, follows when a person puts himself into a mental picture with the other individual and imagines having sexual contact. The third step is planning to bring the fantasy into being. The last step is action which means actually meeting the other individual, talking, kissing, "and making love."

Without any showing of expertise with photographs, Dr. Ferrera, when asked his opinion of the photographs in the books alleged in Counts I and II and the photographs alleged in count V, replied that: "these photographs do promote sexual impulses and sexual fantasies." He added, in response to interrogation, that the "particular" children in "these" photographs would be affected later in life with regard to their sexual identity and sexual relationship with others. Ferrera stated that harm would come to children so photographed because they would have disrupted development resulting in psychopathology at a later time, and that society is harmed in turn.

On cross-examination, Dr. Ferrera testified the photographs in question "would absolutely result in abnormal development," but that not all nude photographs of children would cause such harm, just *these* "nude photographs." Ferrera was unable to say whether the individuals portrayed in the photographs "grew up to have sexual pathologies" because he did not think that he had a way of finding out. The record shows that some of the photographs were 40 to 50 years old and others were 75 to 100 years old or older.

Appellant objected to all of Ferrera's testimony based on lack of qualifications, lack of research as to the individuals in the photographs, and that he was being paid by the State to say the individuals were sexually traumatized without any basis in fact. The objection was overruled. Appellant then asked for a *Daubert* analysis, and the trial court immediately responded that it had performed a *Daubert*[5] analysis and found the evidence was reliable and relevant. The trial court then overruled appellant's further objections based on Rules 402, 403, and 404 of the Texas Rules of Evidence.

Before the jury, Dr. Ferrera restated the general four-step sexual arousal analy-

5. The court reporter record reflects that both appellant's counsel and the trial court used the word "Delbert" instead of "Daubert."

Both parties apparently agree that the reference was to the *Daubert* case.

sis. After a caution by the prosecutor that the issue was not whether the photographs were "lewd," Ferrera testified that all the photographs in evidence would elicit a sexual response. He repeated his earlier testimony about children being photographed in a sexual setting, the harm to the mental and physical development of the child, and the harm to the society in the terms of dollars and in undermining the general fabric of society.

On cross-examination, Ferrera admitted that not all children so photographed have problems in their development or health problems in later life. As to the four-step sexual arousal analysis, the doctor stated that he learned about it "in some trainings that I attended for working with sex offenders," when it was presented as a normal process that all humans go through and how sex offenders use it in an inappropriate way. Dr. Ferrera explained that the process is not limited to sex offenders; that the first step "impulse" is automatic; that it cannot be stopped; that it is our biological way of finding and selecting sexual partners, to mate, to procreate, and to protect our offspring. He added that everybody is involved in the sexual arousal process and that it can be stopped at any stage except "impulse." When shown two defense exhibits, the witness acknowledged that he had an "impulse."

Appellant now urges that there was no proof of the reliability of the four-step sexual arousal theory and no showing how it was relevant to any material issue in the instant prosecution. Further, appellant argues that Ferrera's "harm to the children in the photographs" and "harm to society" testimony was not shown to have a reliable foundation as Ferrera's expertise with photographs was not shown and there was no scientific study or empirical testing. Appellant urges that the validity of the witness's conclusions was never established.

The State recognizes that the complained-of testimony was admitted under *Daubert* but contends that *Nenno*, a prog-

eny of *Kelly*, sets the proper standard. *Nenno* was not in existence at the time of appellant's trial and the facts were not developed in accordance with its appropriate questions. We do not find that *Nenno's* questions can be answered in the affirmative. If they could be so answered, the four-step sexual response analysis is not relevant to any material issue in the prosecution under section 43.26 as alleged. A sexual response is not essential to a prosecution under the statute. Ferrera's testimony about the analysis was not sufficiently tied to the facts of the instant case to aid the jury in resolving a factual dispute. *See Daubert*, 509 U.S. at 591, 113 S.Ct. 2786; *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir.1985).

As noted, there must be a "fit" between the subject matter and the expert's familiarity therewith. *See Broders*, 924 S.W.2d at 153. Degrees, experience, and training do not qualify an expert to answer every conceivable question about psychology. There was no inquiry into Ferrera's qualification in interpreting photographs and determining therefrom the later health problems of those portrayed. It is obvious from Ferrera's testimony that he had not investigated the health or mental problems of those individuals who appeared in the age-old photographs in question. There was no showing that Ferrera was medically trained and qualified to express medical opinions. Yet he testified that those in the photographs were harmed, and that their appearance in the pictures absolutely resulted in abnormal development. His testimony was a subjective belief or unsupported speculation not relying upon the principles involved in the field of his claimed expertise. The fact that an opinion was formed solely for the purpose of litigation does not automatically render it unreliable. However, opinions formed for the purpose of testifying are more likely to be biased toward a particular result. *See Robinson*, 923 S.W.2d at 559.

■■■ It is true as the State argues that the purpose of section 43.26(a) is the

protection of the individual child from exploitation, *see Vineyard*, 958 S.W.2d at 839, but that purpose does not authorize the "harm to children" testimony presented in this case. The "purpose" is not an essential element of the offense of possession of child pornography. The evidence, in addition to being unreliable as presented, was not relevant. The trial court abused its discretion in admitting Ferrera's testimony as to the sexual arousal analysis and the "harm to the particular children and to society" testimony.

■ Can it be said that the error was harmless? "Any other [than constitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Tex.R.App.P. 44.2(b); *see also* Tex.R.Evid. 103(a). "A substantial right of the party is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). Much of Ferrera's testimony about the sexual arousal analysis before the jury was that it was a process "that all humans go through" in order to mate, procreate, and protect offspring. It bordered on common knowledge. We cannot say that this evidence had a substantial effect or influence on the jury's verdict as to Count V. The jury acquitted appellant on Counts I and II, and it is obvious that the jury gave little credence to Ferrera's testimony as to the photographs involved in those counts. Likewise, it is doubtful that the jury believed Ferrera's testimony as to the photographs

in Count V in view of their age and his later testimony that not all children so photographed are harmed. Moreover, where Ferrera's trial testimony was more expansive than his voir dire examination, there was no objection to preserve error. *See* Tex.R.App.P. 33.1(a)(1)(A). In reviewing the record as a whole, we conclude that Dr. Ferrera's testimony relative to Count V had no substantial or injurious effect or influence on the jury's verdict. Points of error three and four are overruled.

## EXCLUSION OF LEONARD SNYDER'S TESTIMONY

■ In point of error five appellant contends that the trial court arbitrarily excluded the testimony of Leonard Snyder, who was capable of testifying to events that were relevant and material to appellant's affirmative defense.[6]

The defense was that the conduct was for a bona fide educational purpose. Snyder, a private investigator, testified that he had been employed by the defense to go to book stores, video movie houses, etc., to view the different books and materials associated with the trial. At this point, the trial court, on its own motion, removed the jury. Appellant's counsel continued the direct examination in the jury's absence. Snyder then testified that the books and the video tapes alleged in the indictment were found at several book stores in Austin and at the public library. He did not find the photographic works of Wilhelm Von Gloeden[7] but learned that the book

---

6. Appellant was prosecuted under section 43.26 of the Texas Penal Code. That statute in pertinent part provides: "(c) The affirmative defenses provided by Section 43.25(f) also apply to a prosecution under this section." Tex.Penal Code Ann. § 43.26(c) (West 1994). Section 43.25 provides:
 (f) It is an affirmative defense to a prosecution under this section that:
 (1) the defendant, in good faith, reasonably believed that the child who engaged in the sexual conduct was 18 years of age or older;
 (2) the defendant was the spouse of the child at the time of the offense;

 (3) the conduct was for a bona fide educational, medical, psychological, psychiatric, judicial, law enforcement, or legislative purpose; or
 (4) the defendant is not more than two years older than the child.
Tex.Penal Code Ann. § 43.25(f) (West 1994).

7. Other testimony showed that Von Gloeden was a noted German photographer of the late nineteenth century and the first two decades of the current century whose photographs of nudes were well-known. A.D. Coleman had testified that several of the photographs enumerated in Count V of the indictment were photographs made by Baron Von Gloeden.

stores could order the same upon request. Snyder did find Von Gloeden photographs available at the Harry Ransom Center at the University of Texas. He checked out a book of Von Gloeden photographs but had to view them in the library.

The State objected, claiming that the testimony was cumulative except for the fact that the book, "Immediate Family," could be found at the public library, and that there was no showing that the Von Gloeden photographs viewed by Snyder were the same as set forth in Count V of the indictment. The trial court sustained the objections and added its own reasoning for the ruling—that the jury would be misled to believe there was a community standard which was not involved in the case. When appellant requested the right to "make a bill of exception," the trial court responded: "You got it on record."

 Appellant relies upon the Sixth Amendment to the United States Constitution and Article I, section 10 of the Texas Constitution. The right to compulsory process includes the right to present a defense. *See Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). It is a fundamental element of due process of law that an accused has the right to present his own witnesses to establish a defense. *See Adanandus v. State*, 866 S.W.2d 210, 228 (Tex.Crim.App. 1993); *Hardin v. State*, 471 S.W.2d 60, 62 (Tex.Crim.App.1971). The right of an accused to present relevant evidence, however, is subject to reasonable restrictions to accommodate other legitimate interests in the criminal trial process. *See United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998); *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). State and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence. *See Scheffer*, 523 U.S. at 308, 118 S.Ct. 1261. The exclusion of unreliable evidence is a principal objective of many evidentiary rules. *See Daubert*, 509 U.S. at 589, 113 S.Ct. 2786. Such eviden-

tiary rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve." *Rock v. Arkansas*, 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

Under our rules only relevant evidence is admissible. *See* Tex.R.Evid. 401, 402, and 403 (even relevant evidence may be excluded); *Adanandus*, 866 S.W.2d at 228. Moreover, error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. *See* Tex.R.Evid. 103(a). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King*, 953 S.W.2d at 271.

In the instant case, the bulk of Leonard Snyder's testimony which was excluded pertained to books and other material alleged in the counts of the indictment of which the jury acquitted appellant. Clearly, it cannot be said a substantial right of appellant was affected under these circumstances. As to the testimony about the Von Gloeden photographs, there is nothing to show that the photographs that Leonard Snyder viewed at the Harry Ranson Center and any Von Gloeden photographs alleged in Count V of the indictment were the same. Again, no substantial right was affected, and no error can be predicated upon the exclusion of the evidence. *See* Tex.R.Evid. 103(a). Point of error five is overruled.

## EXCLUSION OF A.D. COLEMAN'S TESTIMONY

 In point of error six, appellant urges that the trial court erred when it arbitrarily excluded portions of the testimony of A.D. Coleman, who was capable of testifying to events that were relevant and material to an affirmative defense. Appellant's defense was the same as discussed in the last point of error—that his conduct was for a bona fide educational purpose.

A.D. Coleman identified himself as a working critic of photography and art, an author of three books on the subject, a teacher at several universities, and a free lance writer contributing articles on photography and art to The New York Times, New York Observer, and the Village Voice.

During Coleman's testimony, the trial court *sua sponte* instructed the jury to leave the courtroom. The trial court, in the absence of the jury, asked that the field in which the witness was an expert be established, and that questions be limited accordingly. During this hearing, appellant's counsel stated to the court the questions he intended to ask of Coleman. Sometimes the State would object, and occasionally the witness would comment. The trial court ruled on each question as it was offered.

On appeal, appellant now calls attention to a number of proposed questions which the trial court ruled could not be asked. We do not find where appellant objected at the time to the trial court's rulings so as to preserve error on appeal. *See* Tex. R.App.P. 33.1(a)(1)(A). Moreover, we do not find that appellant made an offer of proof or perfected a bill of exception so as to preserve error. *See* Tex.R.Evid. 103(a)(2); *Johnson v. State*, 925 S.W.2d 745, 749 (Tex.App.—Fort Worth 1996, pet. ref'd). Appellant failed to show what the witness's response to the questions would have been, and the substance of the evidence is not before the reviewing court. *Id.* Point of error six is overruled.

## ADMISSION OF VIDEOTAPE AND SALES RECEIPT

■ In points of error seven, eight, nine, and ten, appellant claims that the trial court erred in admitting into evidence a videotape and a sales receipt therefor, both bearing the title of the film, Chicken Hawk: Men Who Love Boys. Appellant argues that the items were irrelevant and their probative value was substantially outweighed by the danger of unfair prejudice, and that the material amounted to impermissible character evidence.

At the pretrial hearing, Manor Chief of Police Robert Snyder testified that he and others searched appellant's hotel with appellant's consent, and that he found the videotape and the sales receipt in question on appellant's bed. Thus, appellant was alerted to Snyder's possible testimony before the jury. At the trial on the merits, Snyder testified that upon entering the hotel room, he observed two videos, a magazine, and a sales receipt on the bed. He added that the "first video was titled, Leo-lo, the second video was titled, Chicken Hawk: Men Who Love Boys. The receipt was from the movie store and beared [sic] Richard Roise's signature on the bottom." Appellant's counsel then asked to approach the bench. He objected that the motion in limine had been violated. The objection was overruled.

■ In order to preserve error for appellate review, a timely specific objection must be made and a ruling obtained. *See* Tex.R.App.P. 33.1(a)(1)(A). In order to be considered timely, the objection must be made at the first opportunity or as soon as the basis of the objection becomes apparent. *See Johnson v. State*, 803 S.W.2d 272, 291 (Tex.Crim.App.1990); *Worthington v. State*, 859 S.W.2d 530, 532 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). An objection made after the prosecutor has elicited the testimony comes too late. *See Angelo v. State*, 977 S.W.2d 169, 177 (Tex.App.—Austin 1998, pet. ref'd). Appellant's objection to the complained-of testimony was untimely. Moreover, when the objection was made, it was merely based on a violation of the granted motion in limine. A granted motion in limine will not preserve error; a defendant must timely and specifically object at the time the subject matter is raised at trial. *See Gonzales v. State*, 685 S.W.2d 47, 50 (Tex. Crim.App.1985); *see also* 43 George E. Dix & Robert O. Dawson, *Criminal Practice and Procedure* § 42.52 at 67 (Texas Practice 1995).

Moreover, Chief Snyder subsequently testified on direct examination that he found two videos on the bed accompanied by a receipt. No reference to titles were made. To this testimony there was no objection. A specific objection must be made each time inadmissible evidence is offered in order to preserve error for review. *See Ybarra v. State*, 890 S.W.2d 98, 114–15 (Tex.App.—San Antonio 1994, pet. ref'd). Still later, Snyder again confirmed what he had found on the bed in appellant's hotel room. After the question was answered, counsel approached the bench and objected that the evidence was extremely prejudicial to appellant. The objection was overruled. Here again, the objection was not timely.

When the sales receipt itself (State's exhibit 57) was offered into evidence along with two other exhibits, appellant expressly stated "No objection" but withdrew the statement and objected that there was "hearsay" in the receipt. He asked that the title to one of the videos be redacted. The objection was overruled. After the sales receipt was admitted into evidence, appellant made "402 and 403 and 404(b) objections[8] to that material." The record then reflects, rather confusingly, that the trial court sustained the objection. This was followed, without objection, by the prosecutor's observation that the three exhibits including State's exhibit 57 (the sales receipt) had been admitted into evidence.

Thereafter, the prosecutor offered the video itself (State's exhibit 56) into evidence. Appellant again objected on the basis of Rules 402, 403, and 404(b), the lack of a chain of custody, and added a request for a limiting instruction at the time of the jury charge. The trial court stated that it had performed the balancing test (Rule 403) but would not make findings of fact and conclusions of law. The

court indicated that it would give the requested jury instruction. When asked by the State, the trial court acknowledged that it had admitted State's Exhibit 56 into evidence. When clarification was requested, the trial court told appellant his "objections" were overruled.

 Overruling an objection to evidence will generally not result in reversal when other evidence of that same fact was received, either before or after the complained-of ruling, regardless of whether the other evidence was introduced by the defendant or the State. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex.Crim.App. 1998). Improper admission of evidence is not reversible error when the same facts are proven by other unobjected-to testimony. *See Ybarra*, 890 S.W.2d at 114–15. Points of error seven, eight, nine, and ten are overruled.[9]

## A REQUESTED JURY CHARGE DEFINITION

 In the eleventh point of error, appellant argues that the trial court erred in refusing "to instruct the jury on the meaning of the non-statutorily defined term 'lewd' in the jury charge." As noted, appellant was charged under section 43.26 of the Penal Code which made it an offense at the time for a person knowingly or intentionally to possess a film image that visually depicted a child younger than eighteen years of age engaging in "sexual conduct," and if the person knows that the material so depicted the child. The applicable statute provided that the term "sexual conduct" had the meaning assigned by section 43.25(a)(2) of the Penal Code which provided: "(2) 'Sexual conduct' means actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, *or lewd exhibition of the genitals.*" Tex.Pe-

---

**8.** *See* Tex.R.Evid. 402, 403, and 404(b).

**9.** We observe that the video titled "Chicken Hawk: Men Who Love Boys" was never played for the jury. Only the video cassette

itself was offered into evidence. Appellant argues its contents were not pornographic, but documentary.

nal Code Ann. 43.25(a)(2) (West 1994) (emphasis added).

Throughout the jury charge, the trial court used the phrase "sexual conduct, to wit: lewd exhibition of the genitals." At the charge conference appellant requested, without more, a definition in the jury charge of "lewd exhibition of genitals." The request was denied.

 If a phrase, term, or word is statutorily defined, the trial court should submit the statutory definition to the jury. *See Willis v. State,* 802 S.W.2d 337, 342 (Tex.App.—Dallas 1990, pet. ref'd). The word "lewd" or the phrase "lewd exhibition of genitals" has not been statutorily defined by the legislature. We do not understand appellant to claim otherwise. Words that are not statutorily defined are to be given their common, ordinary, or usual meaning. *See Martinez v. State,* 924 S.W.2d 693, 698 (Tex.Crim.App.1996); *Williams v. State,* 674 S.W.2d 315, 322 (Tex.Crim.App.1984). Jurors are presumed to know and apply such common and ordinary meanings. *See Cuevas v. State,* 742 S.W.2d 331, 346 (Tex.Crim.App. 1987), *cert. denied,* 485 U.S. 1015, 108 S.Ct. 1488, 99 L.Ed.2d 716 (1988). Thus, if the phrase or word is not statutorily defined, the trial court is not required to define the word or phrase to the jury. *See Andrews v. State,* 652 S.W.2d 370, 375 (Tex.Crim. App.1983). Only if the word or term does not have a common meaning that the jurors can be fairly presumed to know and apply, must a definition be supplied. *See Holmes v. State,* 962 S.W.2d 663, 674 (Tex. App.1998, pet. ref'd untimely filed); *Spector v. State,* 746 S.W.2d 946, 949 (Tex. App.—Austin 1988, pet. ref'd). Normally, a trial court has broad discretion in submitting proper definitions and explanatory phrases to the jury. *See Macias v. State,* 959 S.W.2d 332, 336 (Tex.App.—Houston [14th Dist.] 1997, pet. ref'd).

*Alexander v. State,* 906 S.W.2d 107 (Tex. App.—Dallas 1995, no pet.) involved a prosecution under section 43.25 (sexual performance by a child). There, as in the instant case, the defendant complained that the trial court did not define the term "lewd exhibition of the genitals." Recognizing that the term was not statutorily defined, it was held that the trial court was not required to define the term in the jury charge. *Id.* at 111. We overrule point of error eleven.

## A REQUESTED JURY INSTRUCTION ON SELECTIVE PROSECUTION

 In point of error twelve appellant urges that the trial court erred when it denied appellant's request for a jury charge on selective enforcement as a defense. Appellant claims that he was singled out for prosecution for child pornography as the evidence showed that the materials seized were available to the public in area book stores and public libraries, and that there is no showing that the managers and owners of these repositories have been arrested or prosecuted.

Appellant raises a rather novel contention—that, when supported by the evidence, a defendant is entitled to a defensive jury charge on selective prosecution. Appellant has cited no cases, and neither the State nor this Court have found a single Texas case on point. Selective prosecution is usually challenged by other means such as a motion to quash the indictment, motion to dismiss, or a motion for instructed verdict. *See, e.g., County v. State,* 812 S.W.2d 303, 308 (Tex.Crim.App. 1989); *Carreras v. State,* 936 S.W.2d 727, 730 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd); *Covalt v. State,* 877 S.W.2d 445, 446 (Tex.App.—Houston [1st Dist.] 1994, no pet.); *Callaway v. State,* 818 S.W.2d 816, 838 (Tex.App.—Amarillo 1991, pet. ref'd).

In *Giesberg v. State,* 984 S.W.2d 245, 250 (Tex.Crim.App.1998), *cert. denied,* 525 U.S. 1147, 119 S.Ct. 1044, 143 L.Ed.2d 51 (1999), the court held that a "defense" which is not recognized or specifically labeled as either a defense or an affirmative defense by the legislature does not war-

rant a separate instruction. Selective prosecution has been designated by the Texas legislature as a defense. The United States Supreme Court recently stated: "a selective-prosecution claim is not a defense on the merits to the criminal charge, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong,* 517 U.S. 456, 463, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996).

 A selective-prosecution claim in effect requests the court to exercise judicial power over a "special province of the Executive." *Heckler v. Chaney,* 470 U.S. 821, 832, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). Prosecutors retain broad discretion in enforcing both the nation's and a state's criminal laws. *See Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). The presumption of regularity supports their prosecutorial decisions and "in the absence of clear evidence to the contrary, the courts presume that they have properly discharged their duties." *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926). In the ordinary case, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests in his discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

 While prosecutorial discretion is broad, it is not exempt from constitutional restraints. *See County,* 812 S.W.2d at 308 (citing *Wayte,* 470 U.S. at 608, 105 S.Ct. 1524). One of these restraints, imposed by the equal protection clause of the Fifth Amendment, is that the decision whether to prosecute may not be based on "an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). In applying the above standard, the Court of Criminal Appeals has recognized that an appellant who raises the issue of equal protection has the burden of proving what the Supreme Court has termed "the existence of purposeful discrimination." *Green v. State,* 934 S.W.2d 92, 103 (Tex.Crim.App.1996). To succeed on a selective prosecution-equal protection claim, a defendant must provide exceptionally clear evidence that the decision to prosecute was for an improper reason. *Green,* 934 S.W.2d at 103. "The burden of establishing prima facie the fact of selective prosecution thus lies upon the defendant since the presumption is always that a prosecution for a violation of a criminal law is undertaken in good faith and in a nondiscriminatory fashion for the purpose of fulfilling a duty to bring violators to justice." *Gawlik v. State,* 608 S.W.2d 671, 673 (Tex.Crim.App.1980).

 Appellant relies almost exclusively upon testimony relating to his educational—purpose defense for possessing child pornography. He insists that there is no showing that owners, managers, or librarians at the locations where the books, video tapes, or photographs he was alleged to have possessed were available for sale or rent were ever charged or prosecuted. A mere showing that others could have been prosecuted and were not is insufficient to overcome the presumption of good faith, nondiscriminatory prosecution. The burden was on appellant and he has failed to bring forth evidence indicating the existence of purposeful discrimination. *See Carreras,* 936 S.W.2d at 731. For all the reasons stated, appellant was not entitled to the requested charge on selective prosecution. Point of error twelve is overruled.

## LIMITED VOIR DIRE EXAMINATION

 In the thirteenth point of error, appellant contends that the trial court erred when it limited voir dire examination about jurors' qualifications. While interrogating the jury panel, appellant's counsel made reference to the legislature's "list

— that make a juror fit to serve." Counsel then added: "First one is that you have to be a qualified voter in Texas and Travis County. Has anyone not registered to vote here in Travis County?"

At this point, the trial court summoned counsel to the bench, explaining that in effect the prospective jurors had already been qualified on statutory matters earlier by another district judge. Counsel was told not to pursue this interrogation. The trial court overruled appellant's objection to the trial court's action.

The jury panel was the jury panel *for the case* drawn from the jury panel or pool *for the week* for service in all county, district, and justice courts in Travis County. *See* Tex.Gov't Code Ann. § 62.016 (West 1998).[10] The trial court was obviously referring in its remarks to counsel to the qualification of the prospective jurors on statutory matters by another district judge when empaneling them as members of the jury panel for the week.[11]

 The right to counsel is guaranteed by the Sixth Amendment to the United States Constitution and article I, section 10 of the Texas Constitution. This right includes the right to question prospective jurors in order to intelligently exercise peremptory challenges. *See Howard v. State,* 941 S.W.2d 102, 108 (Tex. Crim.App.1996); *McManus v. State,* 591 S.W.2d 505, 520 (Tex.Crim.App.1979), *overruled on other grounds,* 744 S.W.2d 112, 125 (Tex.Crim.App.1988). A challenge to the trial court's limitation on voir dire examination must be made under an abuse of discretion standard of review. *See Howard,* 941 S.W.2d at 108, *Nunfio v. State,* 808 S.W.2d 482, 485 (Tex.Crim.App. 1991). The propriety of the question that the defendant sought to ask is normally determinative of the issue. *See Nunfio,*

808 S.W.2d at 485. The trial court has wide discretion, however, in controlling the voir dire examination. *See Allridge v. State,* 850 S.W.2d 471, 479 (Tex.Crim.App. 1991), *cert. denied,* 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). The trial court may impose reasonable restrictions on the process. *See Caldwell v. State,* 818 S.W.2d 790, 793 (Tex.Crim.App.1991), *cert. denied,* 503 U.S. 990, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992). The trial court may limit duplicitous questions, *see McManus,* 591 S.W.2d at 520, may restrict confusing or misleading voir dire questions, *see Howard,* 941 S.W.2d at 108, or restrict questions not in proper form. *See Dinkins v. State,* 894 S.W.2d 330, 345 (Tex.Crim.App. 1995).

In the instant case, counsel's statement that a juror had to be a qualified voter in Texas and Travis County was correct. *See* Tex.Gov't Code Ann. § 62.102(3) (West 1998). His question, however, based thereon: "Has anyone not registered to vote in Travis?" was misleading as to jurors' qualifications. The failure to register to vote does not disqualify a person from jury service. *See* Tex.Code Crim.Proc. Ann. art. 33.02 (West 1989); Tex.Gov't Code Ann. § 62.1031 (West 1998); *see also* Tex.Code Crim.Proc.Ann. arts. 35.12 & 35.16(a)(1) (West 1989). The trial court's ruling was correct as the question was misleading as to statutory qualifications. Moreover, the trial court believed the inquiry to be repetitious as the subject of qualifications had been covered by another district judge.

 Appellant now claims an abuse of discretion because a prospective juror must be a citizen of the county in which he is to serve. *See* Tex.Gov't Code Ann. § 62.102(a)(2) (West 1998). This is not the same question propounded at trial about

---

10. This Court will take judicial notice that Travis County has at least three district courts as required by section 62.016(a) so as to render applicable the interchangeable jury law. *See* Tex.Gov't Code Ann. § 62.102 (West 1998).

11. *See* Tex.Gov't Code Ann. § 62.016(c), (d) (West 1998).

qualifications as a voter. The complaint on appeal must correspond to the complaint at trial. *See Turner v. State*, 805 S.W.2d 423, 431 (Tex.Crim.App.1991). Appellant cites *Mayo v. State*, 971 S.W.2d 464, 469 (Tex.App.—Fort Worth 1998, pet. granted), to support his argument that he need not show harm. *Mayo* held that the absence of county-citizen status creates an absolute disqualification from jury service and that a defendant need not show harm where the trial jury actually included a member who was not a citizen of the county where the trial occurred. *See Mayo*, 971 S.W.2d at 470–72. Even if it could be argued that appellant preserved error as to being prevented from making a county-citizen inquiry, *Mayo* is distinguishable. *Mayo* did not involve a voir dire examination question. It involved the post-trial discovery of a non-county citizen who had actually served on the jury. Whatever its continued viability, *Mayo* is not here applicable. After the foregoing was written, the court of appeals' opinion in *Mayo* was reversed. *See Mayo v. State*, 4 S.W.3d 9 (Tex.Crim.App.1999). It was held that the requirement that a juror be a citizen of the county is not an absolute requirement that cannot be waived. *Mayo*, at 10–11. The thirteenth point of error is overruled.

The judgment is affirmed.