**AFFIRMED and Opinion Filed July 23, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-23-00143-CR
_____

**ASTON DAVONTE CARRIER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-83349-2020**

## MEMORANDUM OPINION

Before Justices Reichek, Miskel, and Breedlove
Opinion by Justice Reichek

Aston Davonte Carrier appeals his conviction for murder. Asserting three issues, appellant contends the trial court's judgment should be reversed because (1) the evidence is insufficient to prove his identity as the shooter, (2) the court reporter failed to record bench conferences, and (3) the trial court failed to properly question potential jury members to determine if they were legally qualified. For the reasons that follow, we affirm the trial court's judgment.

## Background

On June 2, 2020, Gina Belalcazar was working from home in her apartment in North Dallas. Belalcazar's home office had floor to ceiling windows facing the parking lot. After finishing a phone call around 2:15 p.m., Belalcazar stood up and looked out the window. She saw a person in the parking lot wearing a black hoodie and dark gloves shoot at another person who was running away. Belalcazar stated she specifically remembered the dark gloves because she saw smoke from the gun coming from the shooter's left hand. When the shooter fired a second time, the person he was chasing fell to the ground, got back up, and stumbled away toward the parking lot exit. Belalcazar ran outside to find the man who had been shot, but found only blood on the ground. After she heard gunshots coming from a different area of the complex, she went back to her apartment and called the police.

When the police arrived they found a crowd surrounding a man on the ground who was later identified as Derek Carr. Carr was lying in a pool of blood with a blood trail leading back into the apartment complex. Carr was transported to the hospital where he died of his wounds.

Carr resided in the same apartment complex as Belalcazar. Surveillance video from security cameras positioned outside his front door shows two men walking up to and around Carr's apartment for over twelve hours before the shooting. One of the men, later identified as Demond Jones, had dreadlocks and was wearing white latex gloves. At several points Jones can be seen knocking on Carr's

door with a gun in his hand. When Belalcazar was shown a still photograph of Jones taken from the video, she stated Jones was not the man she saw shoot Carr. The video eventually shows the men taking the security cameras off the wall. As the cameras are being removed, the video briefly captures an image of the second man wearing a black hoodie and the lower portion of his face covered by a mask.

Following the shooting, Jones jumped into a truck parked by the front entrance to the apartment complex. The truck belonged to Steve Adams, a project manager doing construction work on the property. Jones told Adams he had been shot and needed a ride to the hospital. As Adams began driving, Jones called someone and talked about meeting up. Jones then asked Adams to drive around the neighborhood to find who he was talking to instead of taking him to the hospital. Adams became uncomfortable and took Jones to a nearby gas station and told him to get out of the car. Jones then ordered an Uber to take him to 9048 Christopher Circle in Fort Worth. Jones told the Uber driver that he was meeting with his girlfriend who would take him to the hospital.

A few hours after the shooting, detective Christopher Kight was called to Huguley Hospital in Fort Worth to investigate a man, ultimately identified as appellant, who had come in with gunshot wounds to his hand and leg. Kight testified appellant was uncooperative and told him he did not know who shot him or the identity of the people who brought him to the hospital. Appellant said only that someone shot at him from a Camaro.

Hospital surveillance video showed appellant being dropped off by someone driving a Camaro. From its license plate, the police were able to identify LaShante Dorsey as the owner of the car. Dorsey lived with her two daughters at 9048 Christopher Circle, the same address where Jones was taken by Uber.

Kight went to Dorsey's house to question her and found the Camaro from the surveillance video. Kight stated Dorsey was evasive in her responses to his questions, but she eventually confirmed she had driven appellant to the hospital. Dorsey told Kight she did not know appellant, and that she helped him only because she was asked to by a friend. Dorsey's younger daughter later identified appellant and Jones, stating that the men had been staying in her mother's house. It was further determined that Dorsey's older daughter knew both appellant and Carr.

Forensics performed of shell casings and blood found at the apartment complex showed two areas where shootings had occurred. Blood matching appellant's DNA was found where Belalcazar said she saw the man with dark gloves shoot Carr. Cartridge casings fired from a firearm identified as belonging to Carr were also found nearby.

After hearing the evidence, the jury found appellant guilty of murder. In the punishment phase, the jury sentenced appellant to sixty years in prison. This appeal followed.

**Analysis**

## I. Sufficiency of the Evidence

In his first issue, appellant contends the evidence is insufficient to show his identity as the person who shot Carr. Specifically, appellant relies on the Texas Court of Criminal Appeals opinion in *Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) to argue the State failed to eliminate the possibility that there was another person at the apartment complex dressed like appellant who shot Carr.

When reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011). We do not resolve conflicts of fact, weigh evidence, or evaluate the credibility of the witnesses as this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead we determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the adjudication. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). Each fact need not point directly and independently to the guilt of the appellant as long as the cumulative force of all the incriminating circumstances is enough to warrant conviction. *See Kennemur v. State*, 280 S.W.3d 305, 313 (Tex. App.—Amarillo 2008, pet. ref'd). Circumstantial evidence is as

–5–

probative as direct evidence and can be sufficient alone to establish an accused's guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). "A court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018).

In *Hooper*, the court of criminal appeals explained the difference between a permissible inference from the evidence and impermissible speculation not rooted in the evidence by using the following hypothetical:

> A woman is seen standing in an office holding a smoking gun. There is a body with a gunshot wound on the floor near her. Based on these two facts, it is reasonable to infer that the woman shot the gun (she is holding the gun, and it is still smoking). Is it also reasonable to infer that she shot the person on the floor? To make that determination, other factors must be taken into consideration. If she is the only person in the room with a smoking gun, then it is reasonable to infer that she shot the person on the floor. But, if there are other people with smoking guns in the room, absent other evidence of her guilt, it is not reasonable to infer that she was the shooter. No rational juror should find beyond a reasonable doubt that she was the shooter, rather than any of the other people with smoking guns. To do so would require impermissible speculation. But, what if there is also evidence that the other guns in the room are toy guns and cannot shoot bullets? Then, it would be reasonable to infer that no one with a toy gun was the shooter. It would also be reasonable to infer that the woman holding the smoking gun was the shooter. This would require multiple inferences based upon the same set of facts, but they are reasonable inferences when looking at the evidence.

*Hooper*, 214 S.W.3d at 16. Appellant concedes the evidence is sufficient to show he was present at the location where Belalcazar saw Carr being shot. He argues that, based on the *Hooper* hypothetical, the State was required to show "that there was no

one other than Appellant and Jones present in the apartment complex who could have committed the shooting" and "there is no evidentiary limit on the number of people who could have participated in this criminal act." Appellant's reading of *Hooper* is erroneous.

The analysis in *Hooper* addresses what the evidence shows. It does not suggest the State has the burden to disprove possible scenarios that are unsupported by the evidence. Where the evidence shows there are multiple possible shooters then, absent other evidence, a jury could not conclude beyond a reasonable doubt that a single shooter is guilty. *Id*. In this case, however, the evidence showed only two possible shooters – appellant and Jones. Additional evidence eliminated Jones as the shooter. Belalcazar testified the shooter was wearing dark gloves, and video footage of Jones shows him wearing white gloves. In addition, Belalcazar specifically stated Jones was not the man she saw shoot Carr. This evidence combined with appellant's blood being found in the area where Belalcazar witnessed the shooting occur is sufficient to support the jury's finding that appellant was the person who shot Carr.

Appellant attempts to equate the entire apartment complex with the hypothetical office full of people holding smoking guns. But there is no evidence that anyone in the complex other than appellant and Jones was "holding a smoking gun." The State was not required to disprove the presence of alternative shooters when there was no evidence that any other potential shooters existed. *See Ramsey*

*v. State*, 473 S.W.3d 805, 811 (Tex. Crim. App. 2015); *Reason v. State*, No. 05-21-00701-CR, 2022 WL 16959266, at \*4 (Tex. App.—Dallas Nov. 16, 2022, no pet.). We resolve appellant's first issue against him.

## II. Failure to Record Bench Conferences

In his second issue, appellant contends reversible error occurred when the court reporter failed to transcribe four bench conferences after the trial court granted his omnibus motion requesting, among other things, that all bench conferences be transcribed. Appellant does not dispute that he failed to object to the court reporter's failure make a record of the conferences. *See Valle v. State*, 109 S.W.3d 500, 508 (Tex. Crim. App. 2003) (granting pretrial motion to record bench conferences does not, by itself, preserve error – party must object to failure to do so); *Martinez v. State*, No. 05-22-00210-CR, 2024 WL 277712, at \*3 (Tex. App.—Dallas Jan. 25, 2024, no pet.) (mem. op., not designated for publication). Instead, based on *Becerra v. State* 620 S.W.3d 745 (Tex. Crim. App. 2021), appellant argues he was not required to object until he became aware of the error. Because there was no showing he was aware of the error prior to appeal, appellant argues his complaint has not been waived.

In *Becerra*, the court of criminal appeals held that the appellant preserved error when he objected to the participation of an alternate juror in the jury deliberations as soon as he was made aware the error had occurred. *Id*. at 748. Critical to the court's analysis was that counsel was not present in the room where

the jury deliberations were taking place. *Id.* As the court stated, "[r]equiring otherwise would compel a defense attorney, after closing arguments, to follow the jury outside the courtroom, through doors, hallways, and perhaps other architectural features depending on how the particular courthouse is designed, finally reaching the jury room door for the purpose of counting the number of jurors before the jury begins deliberations." *Id.*

Unlike *Becerra*, defense counsel in this case was present at the bench conferences where the alleged error occurred. Counsel could, therefore, have determined whether the conferences were being transcribed and brought the matter to the attention of the trial court at a time when the judge was in a position to do something about it. *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). We conclude appellant failed to preserve error and we resolve his second issue against him.

### III. Juror Qualifications

In his final issue, appellant contends the trial court erred in failing to question the venire members about their legal qualifications to serve on a jury. Under Article 35.12 of the code of criminal procedure, all prospective jurors must be asked either by the court or under the court's direction whether they (1) are a qualified voter, (2) have been convicted of theft or any felony, and (3) whether they are under indictment or legal accusation for theft or any felony. TEX. CODE CRIM. PROC. ANN. art.

35.12(a). We presume the jury was properly impaneled unless the record affirmatively shows otherwise. *See* TEX. R. APP. P. 44.2(c)(2).

The record here shows the trial court discussed with the venire members that jurors must be legally qualified to serve. The court stated that some prospective jurors might have been released from the central jury room because they were not legally qualified. The court then stated that while "[a]ll of you here are presumably qualified legally to sit as a juror," some may still be dismissed for cause. Later, in response to a question from the State about experience with the judicial process, a venire member indicated she had been convicted in California for felony drug possession. The State verified the conviction, and the venire member was dismissed. Appellant affirmatively stated he had no objections to the jurors that were ultimately chosen.

Appellant argues it was error for the trial judge not to specifically ask the prospective jurors the three qualifying questions listed in Article 35.12. But in larger judicial districts, these questions are routinely asked of the general jury pool under the direction of the court before the venire members are sent to individual courts to be empaneled for a specific case. *See* TEX. GOV'T CODE ANN. § 62.016; *Roise v. State*; 7 S.W.3d 225, 244 (Tex. App.—Austin 1999, pet. ref'd). The trial court's statements that some prospective jurors may have already been dismissed because they were legally disqualified indicates this procedure was followed here. Standing alone, the fact that one venire member was not dismissed from the central jury pool

despite being legally disqualified is not sufficient to show the Article 35.12 questions were not asked at the court's direction, or to overcome the presumption that the jury was properly impaneled.

Even assuming it was error for the trial not to ask the Article 35.12 questions (and that this error was preserved), to reverse a conviction there generally must be a showing of harm. *See* TEX. R. APP. P. 44.2. When an error arises from a trial court's statutory violation, we determine whether the error affected the defendant's substantial rights. *Gray v. State*, 159 S.W.3d 95, 98 (Tex. Crim. App. 2005); *Njogo v. State*, No. 02-18-00245-CR, 2018 WL 6844140, at *2 (Tex. App.—Fort Worth Dec. 31, 2018, no pet.) (mem.op., not designated for publication) (failure to assess qualifications of venire members not constitutional error). To show harm, the record must demonstrate the error deprived appellant of a lawfully constituted jury of qualified individuals. *See Gray v. State*, 233 S.W.3d 295, 301 (Tex. Crim. App. 2007). Appellant does not argue, and the record does not show, that any members of the jury in this case were not qualified. We resolve appellant's third issue against him.

We affirm the trial court's judgment.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
230143F.U05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ASTON DAVONTE CARRIER,
Appellant

No. 05-23-00143-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 380-83349-
2020.
Opinion delivered by Justice
Reichek. Justices Miskel and
Breedlove participating.


Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered July 23, 2024