# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00231-CR

**Jose Jorge Cantu, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274THJUDICIAL DISTRICT NO. 2000-119, HONORABLE DON B. MORGAN, JUDGE PRESIDING

After being charged with the offense of murder, appellant was convicted by a jury of the lesser offense of voluntary manslaughter. *See* Tex. Pen. Code Ann. '' 19.02, .04 (West 1994). The jury assessed punishment at twenty years=confinement and a $10,000 fine. Appellant challenges his conviction, asserting that he received ineffective assistance of counsel, that the trial court erred by admitting expert testimony, and that the trial court erred by failing to limit the definitions of culpable mental states in the jury charge. We affirm the trial court=s judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Appellant killed his roommate, Guillermo Perez, in November 1987 and fled to Mexico where he resided until February 2000. Perez=s body was located approximately two months after his death

---

[1] Because appellant does not challenge the factual or legal sufficiency of the evidence to support his conviction, we will briefly state facts necessary for context and discuss other facts as needed under specific issues.

in a barn near Edna. Despite the advanced decomposition of the body, the medical examiner determined that death was caused by three stab wounds to the chest. At trial, appellant testified as a witness in his own behalf and claimed that he killed Perez in self-defense.

Appellant lived and worked with Perez in Lockhart. According to his testimony at trial, he was planning to move out of their residence because of Perez=s homosexual advances towards him. On the evening of Perez=s death, he and Perez attended a party. At the party, Perez learned of appellant=s plan to move out. When they returned home, appellant entered his bathroom to take a shower. While he was stepping into the shower with his back turned to the door, Perez entered the bathroom and attempted to stab him with a knife. Appellant blocked the strike, and in doing so, received a cut on his left hand. The two then fell back into the bathtub and Perez dropped the knife. A struggle ensued during which appellant grabbed the knife and stabbed Perez, killing him.

After this, appellant testified that he cleaned the bathroom, placed the victim in his truck, and disposed of the body. Appellant then drove to the border and crossed into Mexico where he lived and worked for the next twelve years. In February 2000, he was contacted by Ricardo Suarez, a member of the FBI Violent Crimes Task Force, regarding the victim=s death and agreed to meet with Suarez on the Texas side of the border.

On February 25, appellant was arrested on a murder warrant at an immigration checkpoint while attempting to cross the Texas-Mexico border to meet with Suarez. Initially, appellant said nothing about his self-defense claim to border law enforcement upon his arrest or during telephone conversations with law enforcement prior to his arrest. In fact, appellant claimed he did not kill anybody and did not know

**2**

what had happened to Perez. However, while in custody in Caldwell County, appellant gave three written statements in which he admitted killing Perez, but claimed that he did so in self-defense.

At trial, in response to appellant=s self-defense claim, the State presented as a rebuttal witness Commander Albert Rodriguez, the director of training for the Texas Department of Public Safety. Testifying as an expert in self-defense, Rodriguez explained that an untrained individual, such as the appellant, would not be able to deflect a knife attack in the manner in which he claimed.

The jury found appellant guilty of the lesser offense of voluntary manslaughter. By six issues, appellant challenges his conviction. In his first three issues, appellant asserts that trial counsel rendered ineffective assistance of counsel by opening the door to appellant=s impeachment with an unadjudicated deferred adjudication for burglary of a vehicle in 1987; by failing, after opening the door to impeachment with the deferred adjudication, to request a limiting instruction; and by failing to object to the State=s elicitation of several acts of extraneous misconduct during its cross-examination of appellant. In his fourth and fifth points of error, appellant argues that the trial court abused its discretion in admitting the testimony of Rodriguez, the State=s expert witness. In his final point of error, appellant asserts that the trial court erred by failing to limit the definitions of culpable mental states in the jury charge.

## DISCUSSION

### 1. *Ineffective Assistance of Counsel*

A defendant is constitutionally entitled to reasonably effective assistance of counsel. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). However, this constitutional right does not mean that a defendant is entitled to errorless counsel or counsel whose competency is judged by

hindsight. *Id*. AThe fact that another attorney might have pursued a different course of action at trial will not support a finding of ineffectiveness.@ *Banks v. State,* 819 S.W.2d 676, 681 (Tex. App.CSan Antonio 1991, pet. ref=d).

In assessing the effectiveness of counsel, Texas courts adhere to the test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and adopted by *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986).  Under the *Strickland* test, the defendant must first show that counsel=s performance was deficient, *i.e.*, that his assistance fell below an objective standard of reasonableness.  *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  Second, appellant must affirmatively prove prejudice by showing there is a reasonable probability that, but for counsel=s unprofessional errors, the result of the proceeding would have been different.  *Id*. AA reasonable probability is a probability sufficient to undermine confidence in the outcome.@ *Id*.  Failure to make both the required showing of deficient performance and sufficient prejudice defeats the ineffectiveness claim.  *Strickland*, 466 U.S. at 689; *Thompson*, 9 S.W.3d at 813.

The burden of proving ineffective assistance of counsel rests on the defendant by a preponderance of the evidence. *Thompson*, 9 S.W.3d at 813.  Generally, Aan appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel.@ *Id*.  However, in some situations a single egregious error of omission on counsel=s part can be considered ineffective assistance. *See Vasquez v. State*, 830 S.W.2d 948, 951 (Tex. Crim. App. 1992).

When determining whether counsel was ineffective, any judicial review must be highly deferential to trial counsel and avoid the distorting effects of hindsight.  *Strickland,* 466 U.S. at 689;

**4**

*Thompson*, 9 S.W.3d at 813.  In the absence of a specific record developed on counsel=s ineffectiveness, the defendant must overcome a strong presumption that counsel=s performance fell within the wide range of reasonable professional assistance.  *Thompson*, 9 S.W.3d at 813.[2]  In other words, the defendant must overcome the presumption that the challenged conduct was the product of sound trial strategy.  *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *see also Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).  To defeat this presumption, the trial record must affirmatively demonstrate the alleged ineffectiveness.  *Thompson*, 9. S.W.3d at 814.

Because appellant=s first and second issues both address whether trial counsel rendered ineffective assistance of counsel with regard to the deferred adjudication evidence, we will review them together.

### a.   *Deferred Adjudication Evidence*

---

[2]  Appellant=s motion for new trial did not address ineffectiveness of counsel.

Appellant complains his counsel improperly Aopened the door@ to impeachment evidence concerning appellant=s deferred adjudication probation for burglary when he allowed appellant to testify to the deferred adjudication on direct examination. Such evidence, appellant argues, is barred because it is not a conviction for a felony or a crime involving moral turpitude. *See* Tex. R. Evid. 609(a).[3] Furthermore, appellant complains that counsel compounded the problem by failing to request a limiting instruction on the deferred adjudication.

Under Rule 609, a party may attack a witness=s credibility with evidence that the witness has been convicted of a felony or crime involving moral turpitude. *Id*.; *see also* Tex. R. Evid. 608(b). However, while not admissible to impeach credibility, evidence of a deferred adjudication may be admissible to show a witness=s bias or interest in a particular case, including the bias or interest of a defendant who testifies. *Moreno v. State*, 22 S.W.3d 482, 487 (Tex. Crim. App. 1999); *see also Maxwell v. State*, 486 S.W.3d 196, 199 (Tex. Crim. App. 2001). Appellant argues that because his

---

[3]   Rule 609(a) provides

(a) **General Rule**. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect.

Rule 608(b) provides:

(b) **Specific Instances of Conduct**. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness= credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.

**6**

deferred adjudication for burglary was not a final conviction, there was no plausible strategy for trial counsel to introduce the deferred adjudication on direct. We disagree.

Appellant does not present any record as to counsel=s decision to question appellant about his deferred adjudication or his failure to request a limiting instruction once the door to the deferred adjudication evidence had been opened. In this case, counsel requested notice of the State=s intention to introduce evidence of prior convictions or extraneous offenses. In response, the State filed notice that it would introduce the deferred adjudication evidence at trial. Trial counsel filed two motions in limine excluding Aall extraneous crime or misconduct evidence,@ one before the State filed notice and one after. The record does not reflect whether the court ruled on these motions. Because trial counsel was on notice that the State was planning to introduce evidence of the deferred adjudication, he may have decided to introduce the evidence on direct in an effort to blunt its effect and to persuade the jury that appellant was a credible witness. *See* 1 Steven Goode et al., *Texas Practice: Texas Rules of Evidence: Civil and Criminal* ' 609.4 (2d ed. 1993) (discussing trial strategy of taking Asting out@ of impeachment by eliciting witness=s prior conviction on direct examination). Furthermore, counsel may have decided that requesting a limiting instruction in this instance would have been futile, or would have drawn unnecessary attention to incriminating evidence. *See Garcia v. State*, 887 S.W.2d 862, 881 (Tex. Crim. App. 1994); *Rodriguez v. State*, 974 S.W.2d 364, 372 (Tex. App.CAmarillo 1998, pet ref=d). However, faced with a Acold record@ on counsel=s tactical decisions, we can only speculate. As the court of criminal appeals explained in *Thompson*:

**7**

> Rarely will a reviewing court be provided the opportunity to make its determination [on ineffective assistance of counsel] on direct appeal with a record capable of providing a fair evaluation of the merits of the claim involving such a serious allegation. In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel.

9 S.W.3d at 813-14. Due to the lack of evidence in the record regarding trial counsel=s reasons for introducing the deferred adjudication evidence and for not requesting a limiting instruction, we cannot conclude that counsel=s performance was deficient. *Id*.; *see also Jackson*, 877 S.W.2d at 771. Appellant has not rebutted the presumption that counsel=s decision was the product of sound trial strategy.

Even if counsel=s performance were deficient, the record does not show that there is a reasonable probability that but for counsel=s actions, the trial outcome would have been different. The record shows that overwhelming evidence was presented to the jury that tended to refute appellant=s self-defense claim and impeach his credibility. Such evidence included appellant=s cleaning of the crime scene before fleeing to Mexico; hiding the victim=s body in a remote location; making telephone calls shortly after the incident in 1987, in which he confessed to killing the victim, and in which no mention was made of self-defense[4]; fleeing to Mexico and evading prosecution for many years until his arrest; testifying in a misleading

---

[4] The calls were made to Mitya T. Jamail. Jamail testified that during these phone conversations appellant told Jamail that he Aprobably stabbed [the victim] a hundred times@ and that he killed the victim because the victim gave him AIDS and because the victim was a jealous person who Awouldn=t leave him alone.@ Jamail characterized the statement about stabbing the victim a hundred times as simply a figure of speech. In fact, the medical examiner testified that he was able to confirm only three stab wounds due to the advanced decomposition of the body. However, when asked whether it was possible that the victim was stabbed one hundred times, the medical examiner responded, AOh, yes, very much so. And especially when you take into consideration there are stab wounds on the chest and there are stab wounds on the left groin. So why not something in between or on his back?@

manner that he had informed his father in 1987 about the incident; and making a sequence of incriminating oral and written statements to law enforcement upon his arrest, in which he initially denied killing the victim, then admitted killing him, but in self-defense.

We overrule appellant=s first two issues.

### b.    *Extraneous Conduct*

Appellant also complains that counsel failed to lodge sufficient objections to evidence regarding certain extraneous conduct of appellant elicited by the State during cross-examination. Such evidence is ordinarily barred by rule 609(a). *See* Tex. R. Evid. 609(a).

On cross-examination, the State elicited the following: that appellant lied to the Mexican government about his prior criminal record; that although a United States citizen, appellant paid no income taxes since 1987; that appellant at one time used a false name to obtain lawful alien status; that appellant had been previously convicted of misdemeanor DWI offenses; that appellant had failed to make regular child support payments; and that appellant had violated the conditions of his deferred adjudication probation. At trial, counsel made an objection to the income tax evidence after the State elicited a response from appellant, which the court sustained, and an objection to the evidence regarding child support payments, which the court overruled. Trial counsel did not request an instruction to disregard the income tax testimony. Counsel also requested and received a hearing on the admissibility of appellant=s deferred adjudication file.

Once again, the record is silent as to why counsel failed to object more vigorously to each item of extraneous conduct or to obtain an instruction to disregard the income tax testimony. Counsel may

**9**

have concluded as a matter of strategy that to object in this instance would have drawn unnecessary attention to incriminating evidence or would have incurred the ill will of the jury. *See Rodriguez*, 974 S.W.2d at 371 (unnecessary attention); Steven Lubet, *Modern Trial Advocacy: Analysis and Practice*, 266-67, (2d ed. 1997) (ill will). Assuming that the evidence of extraneous offenses was inadmissible under Rule 609(a), in the absence of a specific record explaining counsel=s tactical decisions appellant has failed to rebut the strong presumption that counsel=s decisions were the product of sound trial strategy. Regardless, even if trial counsel=s performance were deficient, appellant has failed to demonstrate that there is a reasonable probability that but for counsel=s actions the outcome of the trial would have been different, as there was overwhelming evidence in the record that tended to rebut appellant=s self-defense claim. Therefore, we overrule appellant=s third issue.

## *2. Expert Testimony*

In his fourth and fifth issues, appellant argues that the trial court abused its discretion in admitting expert testimony by the State=s self-defense expert, Rodriguez, regarding (1) appellant=s ability to block the alleged knife attack by the victim and (2) the possibility that appellant=s hand wound was self-inflicted.[5] Appellant argues Rodriguez was not qualified to render an expert opinion on these issues.

---

[5] The State=s theory at trial was that appellant accidently cut his left hand while stabbing the victim. This was offered in rebuttal to appellant=s claim that he was cut by the victim while attempting to block the knife attack.

Because both of these issues concern Rodriguez=s qualifications and are subject to the same requirement for the admission of expert testimony, we will address them together.

The appellant concedes that Rodriguez was generally qualified to discuss some aspects of the use of force, self-defense, and sharp-edged weapons. Instead, appellant argues that the State failed to adduce adequate facts to demonstrate by clear and convincing evidence that Rodriguez was qualified Abased upon his study and application of kinesiological and physiological principles@ to give an opinion on the abilities of an untrained individual to divert a knife attack. Furthermore, appellant claims the State did not establish the predicate facts that Rodriguez was an expert with relation to the receipt of knife injuries. Therefore, the substance of appellant=s claim is that Rodriguez was not qualified and that Rodriguez=s testimony amounted to an unreliable scientific opinion.[6] For the reasons set forth below, we disagree.

### *Standard of Review*

Preliminary questions concerning admissibility of evidence are determined by the trial court. *See* Tex. R. Evid. 104(a). Whether the trial court properly admitted Rodriguez=s testimony is subject to an abuse of discretion standard of review. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *Roise v. State*, 7 S.W.3d 225, 233 (Tex. App.CAustin 1999, pet. ref=d), *cert. denied*, 531 U.S. 895 (2000). An appellate court must uphold the trial court=s ruling if it was within the zone of reasonable disagreement. *Weatherred*, 15 S.W.3d at 542.

---

[6] Appellant does not dispute the relevancy of Rodriguez=s testimony, therefore we confine our analysis to whether Rodriguez was qualified and whether his opinion was reliable.

**11**

*Admissibility*

Texas Rule of Evidence 702, which governs the admissibility of expert testimony, provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Tex. R. Evid. 702.

Rule 702 contains two initial hurdles that must be overcome before expert testimony will be admissible. *Roise*, 7 S.W.3d at 234. The proponent of the testimony must establish (1) that the scientific, technical, or other specialized knowledge will aid the trier of fact and (2) that the expert witness is qualified to testify on the subject. *Id*. Under the first prong, an expert's opinion should be based on a body of scientific, technical, or other specialized knowledge that is pertinent to the facts in issue, and sufficiently reliable to assist the jury in accurately understanding other evidence or in determining a fact in issue. *Id.*; *see also Weatherred*, 15 S.W.3d at 542; *Nenno v. State*, 970 S.W.2d 549, 560-61 (Tex. Crim. App. 1998). Under the second prong, no rigid formula exists for determining whether a particular witness is qualified to testify as an expert. *Roise*, 7 S.W.3d at 234. Knowledge qualifying a witness as an expert "may be gleaned entirely from studying technical works, from obtaining a specialized education, from practical experience, or from a combination of the three." *Negrini v. State*, 853 S.W.2d 128, 129 (Tex. App.–Corpus Christi 1993, no pet.) (DWI instructor qualified to testify on blood alcohol content). Under Rule 702, the party offering the expert's testimony bears the burden of proof to establish that the expert is qualified. *See Roise*, 7 S.W.3d at 234.

**12**

While the proponent of the testimony has the burden of establishing the expert=s qualifications, the trial court has the responsibility of ensuring that those who claim to be experts actually have expertise concerning the subject about which they are offering an opinion.@ *Id.* A[A] person with a college degree should not be allowed to testify that the world is flat, that the moon is made of green cheese, or that the Earth is the center of the solar system.@ *Id*. (quoting *E.I. DuPont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995)). Therefore, a degree alone is not enough to qualify a purported expert to give an opinion, instead the inquiry must be into the actual qualification. *Id*. There must be a Afit@ between the subject matter at issue and the expert=s qualifications. *Id*. (quoting *Broders v. Heise*, 924 S.W.2d 151, 153 (Tex. 1996)).

The judge determined that Rodriguez=s testimony was admissible during a hearing held outside the presence of the jury.[7] The record from that hearing shows that Rodriguez was a qualified martial arts expert regarding the use of force, the use of deadly force, and self-defense. Rodriguez=s formal education included many courses in kinesiology, which he described as the study of the actual movement of the human body through the use of certain muscle groups, and anatomy. After college, he attended the regular eighteen-week training academy at the Texas Department of Public Safety (DPS). He has been employed with DPS since 1977 and, at the time of trial, was director of training. He testified that he has attended approximately 6,000 hours of specialized training regarding the use of force and deadly force, including a three-month period at the FBI National Academy. Furthermore, he teaches the use of force and

---

[7] At trial, Rodriguez was limited to testifying in terms of a hypothetical question and not whether *the appellant* could perform the maneuvers he claimed to have made.

deadly force at the DPS academy, and at one time taught actual, hands-on self-defense. In addition, he currently conducts research regarding these theories. Therefore, we conclude that the trial court did not err in concluding that Rodriguez was qualified to give an expert opinion.

Appellant also challenges the reliability of Rodriguez=s testimony. Both parties agree that the applicable test for assessing Rodriguez=s testimony, which he testified was based primarily on his training and experience, is set forth in *Nenno*.[8]  970 S.W.2d at 561; *see also Olin Corp. v. Smith*, 990 S.W.2d 789, 797-98 (Tex. App.CAustin 1999, pet. denied).  According to *Nenno*, the appropriate questions are: (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert=s testimony is within the scope of that field, and (3) whether the expert=s testimony relies upon the principles involved in the field. *Id*. at 561.  The *Nenno* inquiry has been described as the standard for admission of expert testimony in the Asoft@ sciences.  *See Weatherred*, 975 S.W.2d at 542.

Rodriguez testified that his opinion was based on special training, education, and experience in martial arts, the use of force, and particularly self-defense, including body movements, muscle

---

**8** The *Nenno* court determined that factors applicable to the admissibility of scientific expert testimony are to be applied with less rigor when addressing fields of study aside from the hard sciences, such as the social sciences or fields that are based primarily upon experience and training as opposed to scientific method. *See Nenno v. State*, 970 S.W.2d 549, 560-61 (Tex. Crim. App. 1998) (stating that factors such as assessing potential rate of error or subjecting theory to peer review, Amay often be inappropriate for testing the reliability of fields of expertise outside the hard sciences@).

movements, and how they work in certain situations. He also testified that he is familiar with the legal concepts regarding the use of self-defense and deadly force, and makes presentations on those subjects to universities and law enforcement agencies throughout the country. He has contributed to articles on self-defense and the use of deadly force for training purposes within the DPS training academy. Rodriguez testified that the general topic of the use of force includes the use of deadly force and self-defense, and involves some theories from the sciences of anatomy and kinesiology. Because of his practice, he testified that he was also familiar with the many subtopics that exist within the topic of use of force, including the study of body movement, gross motor skills versus complex motor skills, the study of response times, the use of firearms, the use of deadly force without firearms, the use of chemical weapons, and the use of impact weapons. Furthermore, he testified that gross motor skills and complex motor skills are applications of certain scientific theories that are widely accepted in scientific literature and are used in law enforcement to train people to respond in a certain manner in self-defense circumstances. Rodriguez proposed to apply these theories in his testimony at trial regarding the ability to block a knife attack in the manner described by the appellant and the possibility of receiving a self-inflicted hand wound under those circumstances.

We conclude that the above testimony meets the requirements of *Nenno*, and therefore that the trial court did not abuse its discretion by admitting Rodriguez=s testimony. Even if it was an abuse of discretion to admit the testimony, we would find the error harmless pursuant to the non-constitutional standard of review. Tex. R. App. P. 44.2(b); *see also King v. State*, 953 S.W.2d 266, 270-71 (Tex. Crim. App. 1997). As stated previously, there was an overwhelming amount of persuasive evidence presented at trial, aside from Rodriguez=s testimony, from which the jury could have rejected the appellant=s

**15**

self-defense claim. In addition, the State did not emphasize Rodriguez=s testimony in closing argument. *See*

*King*, 953 S.W.2d at 272-73. Issues four and five are overruled.

## 3. *Error in the Jury Charge*

In his sixth issue, appellant argues that the trial court erred by failing to limit the culpable

mental state definitions in the abstract portion of the jury charge to result-oriented conduct. The standard of

review for jury charge error in a criminal case provides that Athe judgment shall not be reversed unless the

error appearing from the record was calculated to injure the rights of defendant, or unless it appears from

the record that the defendant has not had a fair and impartial trial.@ Tex. Code Crim. Proc. Ann. art 36.19

(West 1981). Acknowledging that he did not make a proper objection at trial, appellant argues that, under

*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985), the error was egregious. The State

concedes that appellant has correctly assigned error, but contends that the error was not harmful. *See*

*Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994).

Intentional murder as defined by the penal code is a *result of conduct* offense; a jury

charge which defines Aintentionally@ and Aknowingly@ as it relates to the *nature of conduct* as well as the

*result of conduct* is, therefore, incorrect. *See* Tex. Pen. Code Ann. ' 19.02(a)(1); *see also Cook*, 884

S.W.2d at 491; *Ybarra v. State*, 890 S.W.2d 98, 106 (Tex. App.CSan Antonio 1994, pet. ref=d).

Appellant points out that the trial court defined Aintentionally@ and Aknowingly@ too broadly by including in

the definitions both the *nature* of conduct and the *result* of conduct. The abstract portion of the jury charge

defined Aintentionally@ and Aknowingly@ as follows:

**16**

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

According to appellant, because these definitions emphasized as a result of their placement the nature of appellant=s conduct, the jury may have incorrectly convicted appellant based upon the nature of conduct, rather than the result. Furthermore, appellant argues that the prosecutor=s explanation to the jury of the application of the law to the facts prompted the jury to convict appellant of murder if it found he consciously engaged in the conduct which ultimately caused the victim=s death rather than if appellant intended to cause the victim=s death.

We agree that the trial judge erred by including both the result and nature of conduct in the portion of the jury charge that defined culpable mental states. But for the following reasons, we cannot agree the error was so egregious and created such harm that appellant did not have a fair and impartial trial.

As the State correctly points out, charge error merely begins rather than ends the inquiry by the reviewing court. *Cook*, 884 S.W.2d at 491; *Ybarra*, 890 S.W.2d at 105-107. Therefore, we examine the error in light of (1) the entire jury charge, (2) the state of the evidence, including contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information. *Almanza*, 686 S.W.2d at 171; *Zuliani v. State*, 52 S.W.3d 825, 829 (Tex. App.CAustin 2001, pet. granted). Under this standard, we find, first, that the court correctly stated the requisite mental states in the

**17**

application paragraph of the jury charge. The court informed the jury that, if it found beyond a reasonable doubt that appellant Aintentionally or knowingly cause [sic] the death of an individual, namely Guillermo Perez, by cutting or stabbing the said Guillermo Perez with a knife, you will find the Defendant guilty of the charged offense of Murder . . . .@ When the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious. *See Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) (citing *Plata v. State*, 926 S.W.2d 300, 302-03 (Tex. Crim. App. 1996) (inclusion of superfluous abstraction never produces reversible error in court=s charge because it does not affect jury=s ability fairly and accurately to implement application paragraph)). In addition, the jury charge defined murder as follows: AA person commits the offense of Murder if he intentionally or knowingly *causes* the death of an individual.@ (Emphasis added.) This definition correctly instructed the jury to find appellant guilty of murder if he intentionally or knowingly caused the death of an individual.

Second, the record included substantial evidence for the jury to have concluded that appellant intentionally or knowingly, as defined under the result-oriented concept, caused the death of the victim. The State=s witness, Jamail, testified that appellant called him shortly after the incident and claimed to have killed Perez because Perez was a jealous person and because Perez gave him AIDS, not that he had acted in self-defense. Also, under cross-examination, appellant admitted that he knew during the incident that if he stabbed a person in the chest with a knife, it could reasonably kill that person. In addition, the medical examiner testified that appellant used sufficient force in stabbing Perez to break Perez=s ribs.

Finally, although the prosecutor did make brief reference to the court=s charge in his closing argument, it is not error for the State to quote or paraphrase the jury charge, so long as the prosecutor=s

**18**

argument as to the law is not contrary to the charge. *Ybarra*, 890 S.W.2d at 107 (citing *Whiting v. State*, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990) and *Short v. State*, 511 S.W.2d 288, 291 (Tex. Crim. App. 1974)). In his closing argument, the prosecutor paraphrased the court=s charge, arguing that the evidence supported a finding of murder.[9] After viewing the argument in its entirety, we conclude that it did not call upon the jury to convict appellant because he intended to engage in the conduct that caused the victim=s death, but rather called upon the jury to find that appellant specifically intended the victim=s death to result from his conduct.

Because the application paragraph correctly charged the jury on the culpable mental states, the evidence supported a finding of the applicable mental states, and the prosecutor=s argument in its entirety called upon the jury to find result-oriented conduct, we conclude that the error in the jury charge did not result in egregious harm so as to deny appellant a fair and impartial trial. We overrule appellant=s sixth issue.

Having overruled all of appellant=s issues, the judgment is affirmed.

_____

David Puryear, Justice

_____

[9] The prosecutor stated, ANo dispute, the defendant killed the victim, right? No dispute. How? By stabbing or cutting Guillermo Perez with a knife . . . . Don=t forget what the basic elements are . . . . The defendant killed the victim by stabbing or cutting him with a knife. . . . Those are the basic elements not in dispute. The charge tells you, you must believe beyond a reasonable doubt that the basic elements, what I just told you, and that the defendant acted in an intentional or knowing conduct manner, okay? An intentionally or knowing act. If you believe beyond a reasonable doubt, he is guilty of murder unless he acted in self-defense.@

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   June 13, 2002

Do Not Publish